UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at COVINGTON

CIVIL ACTION NO. 05-161-DLB

JOANN COTTENGIM                                                                 PLAINTIFF

vs.                    MEMORANDUM OPINION AND ORDER

MENTOR CORPORATION                                                              DEFENDANT

*** *** *** ***

This matter is before the court on Defendant's motion for summary judgment (Doc. #21). Plaintiff has filed a response in opposition to this motion (Doc. # 26), and Defendant has filed a reply (Doc. #33). For the reasons that follow, the motion is hereby **granted**.

**I.    Introduction**

Plaintiff is a resident of Kentucky. Defendant is a Minnesota corporation with its principal place of business in California. Jurisdiction is based on diversity, and Kentucky law controls.

Plaintiff claims that she suffered bodily injury, medical expenses, and other damages as a result of the implantation of allegedly defective breast implants. Specifically, Plaintiff alleges that faulty valves allowed for the "egress of contaminated infective fluid into the intracapsular space of the Plaintiff's breast (Compl. at ¶ 9)," causing endocrine, neurological, and autoimmune problems.

**II.     Background**

In January 2002, Plaintiff underwent breast augmentation surgery. Smooth, saline breast implants were inserted. The implants were manufactured by Mentor Corporation and are Mentor Saline Inflatable Mammary Prostheses, Style 1600.

In October 2002, Plaintiff experienced shooting pains down the back of her legs. This would be the first of what would prove to be a number of health problems that Plaintiff now attributes to her breast implants. From October 2002 until the date of her explantation surgery in April 2005, Plaintiff saw a number of physicians and reported, among other ailments, swollen lymph nodes in her groin area, intestinal problems, a series of unexplained stress symptoms, numbness and stinging in her hands, feet, and parts of her back and face, spontaneous bruising, and chest rashes.

In spring 2004, Plaintiff made an appointment with Dr. Susan Kolb, an Atlanta-based plastic surgeon and holistic medicine specialist. After describing Plaintiff's symptoms as atypical neurological disease, positive ANA (anti-nuclear antibodies), fibromyalgia, and right mastodynia, Dr. Kolb recommended that her breast implants be removed. In April 2005, Dr. Kolb removed the implants and reconstructed Plaintiff's breasts. Tissue samples were sent to a specialist, and the implants were sent to Pierre Blais, Ph.D. at Innoval, Ltd., a consulting business which is based in Dr. Blais's home. In January 2006, Dr. Kolb diagnosed Plaintiff with biotoxin disease as a result of mold growing in the right breast implant. Medication was prescribed to Plaintiff for detoxification purposes. While she still has enlarged lymph nodes and continues to receive treatment for her thyroid, Plaintiff reports that, since her implants were removed, most of her symptoms have disappeared.

Upon receiving the breast implants for inspection, Dr. Blais took various measurements of the subject implants and determined that both implants had an incorrectly dimensioned interior diaphragm valve. Dr. Blais believes that these valves were defectively manufactured, rendering the subject implants unreasonably dangerous. He opines that the valve caps did not fit properly into the valve orifices, permitting a harmful bi-directional flow of contaminated microbiological materials. Dr. Blais calls this phenomenon "autoinflation." He attributes this ingress and egress of impurities as the cause of Plaintiff's health problems. Additionally, Dr. Blais reported that a significant amount of foreign matter could be observed within the filling fluid inside the implants. In sum, Plaintiff alleges that the defective implant valves caused a variety of injuries and illnesses, including endocrine, neurological, and autoimmune problems.

### III.     Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute over a material fact cannot be "genuine" unless a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001).

Once the movant has met its initial burden of establishing that summary judgment may be appropriate as a matter of law, the non-movant cannot rest on its pleadings but

3

must instead demonstrate that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts, it must present significant probative evidence in support of its complaint to defeat the motion for summary judgment." *Expert Masonry, Inc. v. Boone County*, 440 F.3d 336, 341 (6th Cir. 2006). If a reasonable jury could not return a verdict for the nonmoving party based on the evidence construed in its favor, summary judgment should be granted to movant. *See Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).

**IV.    Analysis**

This matter is strikingly similar to *Alfred v. Mentor Corp.*, 2007 WL 708631 (W.D. Ky.), a case decided by Judge Coffman, which involved the same Defendant and the same proffered expert witness, Dr. Pierre Blais. Additionally, both cases involve claims based on allegedly defective saline breast implants manufactured by Defendant.[1] While not published and, therefore, not controlling, this court finds Judge Coffman's opinion in *Alfred* to be highly persuasive and "on all fours" with the matter before this court. Therefore, this court follows Judge Coffman's line of reasoning with regard to Plaintiff's manufacturing defect claim.[2]

In support of its motion for summary judgment, Defendant argues that Plaintiff's claims are preempted by the Medical Device Amendments, 21 U.S.C. § 360 *et seq.*, to the

---

[1] Plaintiffs, in both cases, allege that the at-issue implants suffer from incorrectly molded valve parts.

[2] *Alfred* also involved claims based on theories of negligence, breach of implied warranty of merchantability, misrepresentation, and violation of the Kentucky Consumer Protection Act – claims that are not at issue here.

Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et. seq.* Alternatively, Defendant argues that Plaintiff has failed to come forth with evidence of a manufacturing defect.

The Medical Device Amendments (hereinafter referred to as "MDA"), enacted to ensure the safety and effectiveness of medical devices intended for human use, classifies medical devices based on the risk they pose to the public. *Alfred*, 2007 WL 708631, at *2 (W.D. Ky. 2007). "Class III devices, such as the implants at issue in this case, pose the greatest risk" to the public; "therefore, they are subject to a rigorous pre-market approval process." *Id.* Pre-market approval (hereinafter referred to as "PMA") is granted only after the Food and Drug Administration (hereinafter referred to as "FDA") makes a finding that a device is safe and effective with regard to the design specifications, manufacturing processes, and labeling proposed by the manufacturer in its pre-market approval application. 21 U.S.C. § 360e(d)(2).

Section 360k(a) of the MDA includes an express preemption provision. It provides:

> [E]xcept as provided in subsection (b) of this section, no state or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

The Sixth Circuit has acknowledged that the question of "whether the express preemption provision of the MDA, § 360k, preempts state law tort causes of action" has "sharply divided" the circuit courts. *Kemp v. Medtronic, Inc.*, 231 F.3d 216, 221 (6th Cir. 2000).

The Supreme Court, in *Medtronic v. Lohr*, 518 U.S. 470, 474 (1996), addressed the issue of whether the MDA "pre-empts a state common-law negligence action against the manufacturer of an allegedly defective medical device." The Court held that Congress did

5

not intend for the MDA "to deprive States of *any* role in protecting consumers from the dangers inherent in many medical devices." *Alfred*, 2007 WL 708631, at *2 (quoting *Lohr*, 518 U.S. at 489) (emphasis added). While this holding suggests that "at least some state tort law actions can be maintained for violations of FDA regulations," *Alfred*, 2007 WL 708631, at *2, the Supreme Court has commented that "the scope of federal preemption under § 360k(a) is ambiguous." *Martin v. Telectronics Pacing Sys., Inc.*, 105 F.3d 1090, 1093 (6th Cir. 1997).

The courts that have examined the scope of the MDA's express preemption provision have focused on whether:

> (1), the FDA has established specific counterpart regulations or other specific federal requirements; that are (2) applicable to a particular device; and thus (3) make state regulations different from, or in addition to, the specific FDA requirements.

*Kemp*, 231 F.3d at 224-225. Additionally, for preemption to apply, "the state requirement must relate to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device." *Martin*, 105 F.3d at 1094 (citing *Lohr*, 518 U.S. at 472) (internal quotations omitted). "Finally, state regulations of general applicability are not preempted except where they have the effect of establishing a substantive requirement of a specific device." *Id.*

Thus, as an initial inquiry, this court must determine whether the FDA has imposed specifically applicable federal requirements upon the at-issue implants through the PMA process. In *Kemp*, the Sixth Circuit held that when "the FDA has approved a medical device under a PMA Supplement and imposed conditions of approval, a specific federal requirement for purposes of preemption under the MDA is established." *Enlow v. St. Jude*

6

*Med., Inc.*, 210 F. Supp. 2d 853, 858 (W.D. Ky. 2001) (citing *Kemp*, 231 F.3d at 228). Therefore, a claim "seeking to impose a state requirement that differs from, adds to, or impedes the implementation and enforcement of the design, manufacturing processes, or labeling contained" in a product's "original PMA or PMA Supplement is preempted." *Enlow,* 210 F. Supp. 2d at 858.

The Mentor Style 1600 is a Class III medical device as defined by 21 C.F.R. § 878.3530. On May 10, 2000, the Mentor Style 1600 was approved by the FDA pursuant to the pre-market approval process set forth in 21 U.S.C. § 360e(c). It should be noted, however, that, in her response to Defendant's motion for summary judgment (Doc. #26), Plaintiff questions whether the Mentor Style 1600 implants actually received pre-market approval. Plaintiff states that these devices gained approval through the less rigorous Medical Device Amendments § 510(k) substantial equivalency findings. Plaintiff bases this assertion "upon belief and information" without revealing the source or reasoning behind this averment (Doc. #26-1 at 13). This declaration contradicts both the affidavit of Clark Scherff, Vice President Regulatory Compliance/Quality Assurance and Compliance Officer for Mentor Corporation (Doc. #21-7) and Plaintiff's responses to Defendant's admissions requests (Doc. #21-11 & 12), wherein Plaintiff admitted that the Mentor Style 1600 implants had received pre-market approval from the FDA.

As Defendant notes in its reply (Doc. #33-1), "Once the moving party points to evidence demonstrating that no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable fact finder could rule in its favor." *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (citing *Matsushita v. Elec. Indus. Co. v. Zenith Radio*

7

*Corp.*, 475 U.S. 574, 587 (1986)). "Speculation and conclusory allegations do not satisfy this duty." *Id.* (citing *Groman v. Township of Manalapan,* 47 F.3d 628, 637 (3d Cir. 1995)). Plaintiff's "belief and information" does not satisfy the non-moving party's duty to set forth specific facts showing that a genuine issue of material fact exists, and the court is satisfied that the FDA imposed requirements on the subject implants through the PMA process. "Therefore, under the standard established in *Kemp* and *Enlow*, the FDA's PMA order approving the defendant's design, manufacture, and labeling standards established the threshold-specific federal requirements for the purposes of pre-emption under the MDA." *Alfred*, 2007 WL 708631, at *3.

Having determined that the FDA has imposed relevant and specific FDA requirements on the subject implants, this court must address Plaintiff's manufacturing defect claim, so as to ascertain whether it seeks to impose "state regulations different from, or in addition to, the specific FDA requirements" applicable to the at-issue devices. *Kemp*, 231 F.3d at 224-25.

Plaintiff alleges that the subject implants were manufactured defectively. According to Kentucky law, a manufacturing defect claim "requires proof that the product did not meet the manufacturer's required specifications." *Enlow*, 210 F. Supp. 2d at 859 (citing *Ford Motor Co. v. McCamish*, 559 S.W.2d 507 (Ky. Ct. App. 1977)). Therefore, a determination that the defendant "was strictly liable under a manufacturing defect theory based on Kentucky law would not impose a requirement that differs from the standards imposed by the FDA, and therefore preemption is inappropriate." *Alfred*, 2007 WL 78631, at *6.

A state law claim is preempted to the extent that it maintains a device is defective despite compliance with the FDA-approved requirements. *Enlow*, 210 F. Supp. 2d at 859

8

(citing *Mitchell v. Collagen Corp.*, 126 F.3d 902, 913 (7th Cir. 1997)).  Here, Plaintiff alleges that the subject implants do not satisfy the FDA-imposed manufacturing requirements.  However, mere allegations are not enough to avoid preemption, since, under Kentucky law, a manufacturing defect claim "requires proof" that the at-issue device failed to satisfy the manufacturer's required specifications.  *Enlow*, 210 F. Supp. 2d at 859.  Faced with this hurdle, Plaintiff hoped to offer proof of the alleged manufacturing defect via the expert opinion testimony of Dr. Pierre Blais.  However, in a separate Order, this court has excluded Dr. Blais's testimony on *Daubert* grounds.  Without Dr. Blais's testimony, Plaintiff has no evidence as to the existence of a manufacturing defect, an essential element of Plaintiff's claim.[3]

Plaintiff would have the court believe that Dr. Blais's and Dr. Kolb's mere allegations that a manufacturing defect exists is enough to avoid preemption.  More specifically, Plaintiff argues, "Doctors Blais and Kolb have testified that they have no criticism of the FDA approved design and manufacturing process requirements of the Mentor Style 1600 implants.  By that admission, Mentor's preemption argument is removed from consideration and is not an issue…These implants simply were not made correctly, for whatever reason" (Doc. #26-1 at 9).  This type of unsupported, conclusory allegation does not raise an issue of material fact and illustrates the shortcomings of Plaintiff's claim.  While Plaintiff has alleged that the at-issue implants do not comply with the specifications set forth in

---

[3] Had Dr. Blais been allowed to testify, his testimony still would not have established that the subject implants failed to satisfy the manufacturer's own specifications. Rather, his testimony simply sets forth conclusory statements that the subject implants suffered from manufacturing defects without actually describing how the subject implants failed to satisfy the manufacturer's required specifications.

Defendant's FDA-approved PMA application, she has not done so with particularity and has not provided any proof that the implants failed to meet Defendant's manufacturing requirements.

Since Plaintiff has failed to come forward with any evidence that the at-issue implants do not comply with the FDA-imposed requirements, preemption applies, and the suit is barred by the MDA. Even if preemption does not apply, however, Defendant is entitled to summary judgment on Plaintiff's strict liability claims, as no disputed issue of material fact as to the alleged manufacturing defect exists.

One final matter deserves comment. Defendant has filed a motion to exclude expert opinion testimony of plaintiff expert Susan Kolb, M.D., the plastic surgeon who removed Plaintiff's breast implants (Doc. #19). Based on the court's exclusion of Dr. Blais's expert opinions via separate order, the court need not address the admissibility of Dr. Kolb's testimony. Without Dr. Blais's testimony, Dr. Kolb's testimony is insufficient to support a manufacturing defect claim, since the record indicates that Dr. Kolb's opinion as to an alleged manufacturing defect is based upon Dr. Blais's observations.

**V.  Conclusion**

For the reasons stated herein, **IT IS ORDERED THAT** –

(1) Defendant's motion for summary judgment (Doc. #21) be, and hereby is, **GRANTED**. A separate Judgment for Defendant shall be entered concurrently herewith;

(2) Defendant's motion to exclude the expert testimony of Susan Kolb, M.D. (Doc. #19) be, and hereby is, **DENIED**;

(3) This action is hereby **DISMISSED** with **PREJUDICE** and **STRICKEN** from the docket of this Court.

This 24th day of September, 2007.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\05-161-cottengim-final2.wpd